**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ANTHONY CHANEY,

        Plaintiff-Appellant,

v.

DANIEL WADSWORTH, in his
individual capacity and as Ronan Police
Chief; et al.,

        Defendants-Appellees.

No. 15-35892

D.C. No. 9:14-cv-00177-DWM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Submitted June 8, 2017[**]
Seattle, Washington

Before: McKEOWN, CALLAHAN, and IKUTA, Circuit Judges.

Anthony Chaney ("Anthony") appeals from the district court's order

granting summary judgment for defendants-appellees in his civil action brought

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

under 42 U.S.C. § 1983 and Montana state law.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's grant of summary judgment.  *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).[1]

**1.**  "A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law."  *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The defendants, City of Ronan officers (the "officers"), are eligible for qualified immunity if "their conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable

---

[1]  The facts are familiar to the parties and are restated here only as necessary to resolve the legal issues of the appeal.

[officer] would have known" at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity analysis centers around two questions: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right"; and (2) was the right "clearly established" at the time of the alleged misconduct? *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Fourth Amendment, through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures by state officials. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The Fourth Amendment permits arrests supported by probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Under Mont. Code Ann. § 45-7-302(1), a person commits obstruction if he or she "knowingly obstructs" a peace officer, which requires "that an individual . . . engage in conduct under circumstances that make him or her aware that it is highly probable that such conduct will impede the performance of a peace officer's lawful duty." *City of Kalispell v. Cameron*, 46 P.3d 46, 47 (Mont. 2002). We conclude that the officers had probable cause to arrest Anthony under the Montana statute.

Taking the facts in the light most favorable to Anthony, an officer responded to a reported bar fight at 2:00 a.m. and found Anthony on top of Donald, who was

screaming. Anthony said that Donald was his brother and had PTSD. Two more officers arrived, and one officer got on top of Anthony to try to cuff Donald while a second officer grabbed Anthony by the arm and lifted him off Donald. Anthony yelled at the officers and said "f— that dude in the black shirt," referring to one of the officers. Although Anthony was told his conduct was obstructing the officers, Anthony continued to make threats. The officers then handcuffed Anthony. At some point, Anthony received a scratch on the neck. It was reasonable for the officers to believe that Anthony's conduct was creating a risk of more violence and that Anthony was obstructing a peace officer under Mont. Code Ann § 45-7-302(1), when he threatened the officer. No reasonable jury could find that the officers did not have probable cause to arrest Anthony for obstruction. *See McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984); *Peschel v. City of Missoula*, 686 F. Supp. 2d 1107, 1119 (D. Mont. 2009).

**2.** The Fourth Amendment protects against unreasonable or excessive force by law enforcement officers. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

4

Responding to a reported fight in progress, the officers found Anthony on top of Donald and separated the two men, causing a scratch on Anthony's neck. Anthony was not beaten or injured, beyond the scratch. Because the intrusion on Anthony's Fourth Amendment interests was small, merely a scratch on the neck, and the countervailing governmental interest at stake was to protect an officer in the performance of his duty, the officers' use of force was reasonable under the circumstances and did not violate Anthony's Fourth Amendment rights. *See Graham*, 490 U.S. at 396–97; *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

**3.** Municipalities, like the City of Ronan, can be held liable under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, "[l]ike individual state officials, municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007) (citing *Monell,* 436 U.S. at 691). Because the officers did not violate Anthony's Fourth Amendment rights, there is no basis for his *Monell* claims.

**4.** Summary judgment was also proper on Anthony's claims under Montana state law. Because the officers did not violate Anthony's Fourth Amendment rights against unreasonable search and seizure, they did not violate those rights

5

under the Montana Constitution either. "Where a provision of the Montana Constitution mirrors a provision of the United States Constitution, the Montana Supreme Court looks to the decisional law of the federal courts for guidance on developing the applicable analysis under the identical provision of the Montana Constitution." *Peschel*, 664 F. Supp. 2d at 1161 (citing *Quigg v. Slaughter*, 154 P.3d 1217 (Mont. 2007)). Indeed, "Montana's constitutional provision regarding searches and seizures [Article II § 11] mirrors the Fourth Amendment to the United States Constitution." *State v. Siegal*, 934 P.2d 176, 183 (Mont. 1997), *overruled on other grounds by State v. Kuneff*, 970 P.2d 556 (Mont. 1998); *see also State v. McMaster*, 191 P.3d 443, 445 (Mont. 2008).

Nor did the officers violate Anthony's right to privacy under the Montana Constitution. *See State v. Hill*, 94 P.3d 752, 756 (Mont. 2004). Here, Anthony's arrest and brief detention, which were supported by probable cause, did not specially implicate his right to privacy. Moreover, Anthony does not allege that any of his property was illegally searched or seized.

Finally, because the officers did not use more force than was reasonably necessary, no reasonable jury could find them liable for assault and battery under Montana law. *Luciano v. Ren*, 589 P.2d 1005, 1008 (Mont. 1979) (noting that "a public officer acting under authority of law and without malice is not liable for

6

assault and battery provided he uses no more force than is reasonably necessary under the circumstance to properly perform his official duties") (citation omitted).

The District Court's grant of summary judgment is **AFFIRMED**.