DA 19-0588



FILED
08/17/2021
Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA
Case Number: DA 19-0588

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 212

STATE OF MONTANA,

        Plaintiff and Appellee

v.

KACEY LEE SECREASE,

        Defendant and Appellant.

FILED
AUG 17 2021
Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2018-135
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Leo Gallagher, Lewis and Clark County Attorney, Daniel Baris, Deputy
County Attorney, Helena, Montana

Submitted on Briefs: June 16, 2021

Decided: August 17, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Kasey Lee Secrease (Secrease) appeals from his jury trial and the September 6, 2019 Judgment and Commitment issued by the First Judicial District Court, Lewis and Clark County, following his convictions for felony driving under the influence of alcohol and/or drugs (DUI) and misdemeanor obstructing a peace officer.

¶2 We address the following dispositive issue on appeal:

*Whether Secrease received ineffective assistance of counsel when his counsel failed to object to an incorrect jury instruction which lowered the State's burden of proof on the offense of obstructing a peace officer.*

¶3 We reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On the evening of February 17, 2018, Secrease was driving in Helena when he turned without signaling, changed lanes without signaling, and signaled without changing lanes. Behind him at the time was Montana Highway Patrol Trooper Charles Burton (Trooper Burton), who activated his overhead lights to perform a traffic stop after witnessing Secrease's driving behavior. After Secrease pulled over, Trooper Burton approached the car, explained the reason for the stop, and began to speak with Secrease and his passenger, Teancum Martin (Martin). Trooper Burton noticed the odor of burnt marijuana coming from the car and that Secrease had bloodshot eyes and slurred speech. Trooper Burton ultimately had Secrease exit the car to begin a DUI investigation and noticed Secrease's pants were undone and the odor of alcohol on Secrease's breath. Trooper Burton asked Secrease if he had been drinking, and Secrease admitted drinking

2

earlier in the day. Trooper Burton performed a pat-down search of Secrease and then detained him in the back of the patrol car while he returned to Secrease's car to speak with Martin. Martin had a nearly-empty beer can at his feet and admitted to smoking marijuana. It was later discovered Martin had a warrant for his arrest out of Idaho.

¶5 Trooper Burton had Secrease exit the patrol car to perform field sobriety tests. Secrease performed poorly on several of the field sobriety tests, so Trooper Burton asked him to perform a preliminary breath test and informed him that, while he had the right to refuse this test, his license would be suspended for six months if he refused. Secrease refused to take the breath test. Trooper Burton placed Secrease under arrest for DUI, read Secrease the implied consent advisory form (again noting Secrease's license would be suspended for refusing the test), and requested Secrease submit to a blood test. Secrease refused to submit to the blood test. Trooper Burton then applied for, and was granted, a telephonic search warrant for Secrease's blood. Trooper Burton drove Secrease to St. Peter's Hospital for the blood draw. At the hospital, Secrease again refused to provide a blood sample. Trooper Burton reminded Secrease he had a warrant to obtain a blood sample and could be handcuffed and/or held down to have his blood drawn. Secrease again refused to have his blood drawn and hospital personnel told them to "get the hell out" because they would not perform a blood draw under those circumstances. Trooper Burton and Secrease left the hospital and no blood draw was performed. Secrease was ultimately charged with felony DUI and misdemeanor obstructing a peace officer.

¶6 The matter went to a three-day jury trial in April of 2019. Secrease was represented by three attorneys at trial—Greg Beebe, Brent Flowers, and Jack Morris. Secrease's attorneys did not provide proposed jury instructions at trial, and did not object to the State's instructions with the exception of asking the District Court to remove references to "and/or drugs" from the DUI jury instructions. The District Court removed such references and gave the remainder of the State's jury instructions without objection from the defense. Relevant to this proceeding, the District Court gave instructions relating to the obstruction of a peace officer charge. Instruction No. 19 stated:

> A person commits the offense of OBSTRUCTING A PEACE OFFICER if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law.

Instruction No. 20, in relevant part, stated the State must prove three elements to convict Secrease of Obstructing a Peace Officer:

That the Defendant

> 1. obstructed, hindered or impaired;
>
> 2. the enforcement of the criminal law; AND
>
> 3. acted knowingly.

Instruction No. 21 stated:

> As to Count II (Obstructing a Peace Officer), a person acts knowingly when the person is aware of his or her conduct.

¶7 During its deliberations, the jury asked three written questions. One related to voir dire and another to the amount of alcohol needed to be considered "under the influence." The final jury question—with the heading of "Obstruction Question"—asked, "if the blood

4

test & breath test are refused after a warrant is issued, is that obstructing, hindering or impairing the law[?]" After discussing the jury's question with counsel for the State and the defense, the District Court sent back a written response stating, "[y]ou are instructed to refer to the instructions previously given."

¶8 The jury convicted Secrease of both DUI and obstructing a peace officer. The District Court sentenced him to the Montana Department of Corrections for 13 months, with a recommendation for Secrease to be placed in the WATCh program, followed by a 3-year suspended sentence, on the felony DUI and to 120 days at the Lewis and Clark County Jail for obstructing a peace officer. Secrease appeals.

## STANDARD OF REVIEW

¶9 We review the jury instructions given by a district court for an abuse of discretion. *State v. King*, 2016 MT 323, ¶ 7, 385 Mont. 483, 385 P.3d 561 (citing *State v. Lacey*, 2012 MT 52, ¶ 15, 364 Mont. 291, 272 P.3d 1288). We review jury instructions in criminal cases to determine "whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *King*, ¶ 7 (quoting *State v. Dunfee*, 2005 MT 147, ¶ 20, 327 Mont. 335, 114 P.3d 217). Ineffective assistance of counsel claims are mixed questions of law and fact which we review de novo. *State v. Johnston*, 2010 MT 152, ¶ 7, 357 Mont. 46, 237 P.3d 70 (citing *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095).

DISCUSSION

¶10   *Whether Secrease received ineffective assistance of counsel when his counsel failed to object to an incorrect jury instruction which lowered the State's burden of proof on the offense of obstructing a peace officer.*

¶11   As charged in this case, "[a] person commits the offense of obstructing a peace officer . . . if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law[.]" Section 45-7-302(1), MCA. "Knowingly" is also defined in Montana's criminal statutes:

> a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as "knowing" or "with knowledge", have the same meaning.

Section 45-2-101(35), MCA. Montana's statutory definition of "knowingly" contains both a conduct-based and a result-based version, and "[j]uries are to be instructed on the mental state pertinent to the crime charged." *State v. Ilk*, 2018 MT 186, ¶ 18, 392 Mont. 201, 422 P.3d 1219 (collecting cases); *see also State v. Azure*, 2005 MT 328, ¶ 20, 329 Mont. 536, 125 P.3d 1116 ("When a criminal offense requires that a defendant act 'knowingly,' the District Court must instruct the jury on what the term 'knowingly' means in the context of the particular crime.").

¶12   In this case, the District Court, without objection from counsel for Secrease, instructed the jury that "a person acts knowingly when the person is aware of his or her

conduct" in Instruction No. 21. On appeal, Secrease asserts this instruction was in error as the District Court instructed the jury on the conduct-based definition of "knowingly," rather than the results-based one. We have previously acknowledged that, for the purposes of instructing the jury on a charge of obstructing a peace officer, the results-based "knowingly" instruction should be given. *See Johnston*, ¶¶ 12, 14; *see also City of Kalispell v. Cameron*, 2002 MT 78, ¶ 11, 309 Mont. 248, 46 P.3d 46 (noting that to convict a defendant of obstructing a peace officer, the defendant must be "aware that his conduct would hinder the execution of the Officers' duties"). Secrease concedes his trial counsel did not object to Instruction No. 21 at trial and therefore asks us to review the issue under either plain error review or pursuant to his claim of ineffective assistance of counsel. The State, while acknowledging the District Court gave the wrong "knowingly" instruction, contends the matter is not appropriate for plain error review and that Secrease cannot meet his heavy burden to show ineffective assistance of counsel on direct appeal.

¶13 "Article II, Section 24 of the Montana Constitution and the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, guarantee a defendant the right to effective assistance of counsel." *State v. Santoro*, 2019 MT 192, ¶ 14, 397 Mont. 19, 446 P.3d 1141 (citing *Kougl*, ¶ 11). In assessing ineffective assistance of counsel claims, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Kougl*, ¶ 11. Under the *Strickland* test, the defendant must (1) demonstrate that "counsel's performance was deficient or fell below an objective standard of reasonableness" and (2) "establish prejudice by demonstrating that there was a

7

reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Kougl*, ¶ 11 (quoting *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234).

¶14 When a defendant raises ineffective assistance of counsel claims on direct appeal, we must first determine whether the claims are more appropriately addressed in a postconviction relief proceeding. *State v. Rodriguez*, 2021 MT 65, ¶ 31, 403 Mont. 360, 483 P.3d 1080 (citing *Santoro*, ¶ 16). Ineffective assistance of counsel claims are appropriate for review on direct appeal when "no plausible justification" exists for the actions or omissions of defense counsel. *Kougl*, ¶ 15 (citing *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641).

¶15 Here, as we did in *Johnston*, we conclude there is no plausible justification for the failure of Secrease's counsel to seek the correct "knowingly" jury instruction on the obstructing a peace officer charge and this matter is appropriate for review on direct appeal. *Johnston*, ¶ 16 (citing *Kougl*, ¶ 21). By instructing the jury that Secrease only need to be aware of his conduct—that he was refusing the blood test—rather than properly instructing them that Secrease needed to be aware of the result of his conduct—that refusing the blood test after Trooper Burton had obtained a search warrant was obstructing, hindering, or impairing the enforcement of the criminal law—the State's burden in proving the crime was reduced. *See Johnston*, ¶ 16. Counsel's representation was therefore deficient.

¶16 The State argues that, even if he can prove his counsel was deficient for not asking for the correct "knowingly" instruction, Secrease cannot prove he suffered the prejudice

8

prong of the *Strickland* test. In support of this assertion, the State argues the State itself gave the correct burden in its own closing argument when the prosecutor told the jury:

> It's the very next instruction, instruction 21 which says as to count two, obstructing a peace officer. A person acts knowingly when a person is aware of his or her conduct, right. So he had to obstruct, hinder or impair the enforcement of criminal law and basically know that what he was doing was doing that, he was likely to be doing that, okay.

We have previously rejected the argument that the closing argument of a party can substitute for proper jury instructions, and we reject that argument once again here. It is the duty of the court to instruct the jury on the law, and that duty cannot be delegated to counsel. *Kougl*, ¶ 26 (citations omitted). "Closing arguments are not evidence, neither do they substitute for proper jury instructions[.]" *Kougl*, ¶ 26 (quoting *United States v. Pedigo*, 12 F.3d 618, 626 (7th Cir. 1993)). Though in this case the State may have correctly told the jury Secrease needed to know that refusing the blood test was hindering the enforcement of the law, that "is not the same as hearing it from the court. This is especially true when it comes in the form of written jury instructions that the jury may read, reread, and reflect on while in deliberation." *Kougl*, ¶ 26. Further, the jury's question in this case showed confusion on the results-based nature of the obstruction charge and, in response to that confusion, they were referred back to the incorrect conduct-based instruction by the District Court. Counsel's deficient representation in this case prejudiced Secrease's case "such that there is a reasonable probability [the jury] would have arrived at a different outcome." *Johnston*, ¶ 16 (quoting *Kougl*, ¶ 26). As such, Secrease's obstruction of a

9

peace officer conviction must be reversed and remanded to the District Court for a new trial. *See Johnston*, ¶¶ 16-17.

¶17 As we have determined Secrease was prejudiced by ineffective assistance of counsel at trial, it is unnecessary to address his alternative claim regarding the incorrect jury instruction under plain error review.

## CONCLUSION

¶18 Secrease received ineffective assistance of counsel at trial when his attorneys neither objected to the incorrect "knowingly" instruction nor proposed the correct one themselves. Secrease was prejudiced by the deficient performance of his counsel and a new trial is warranted.

¶19 Reversed and remanded for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

10