FILED

05/12/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0021

DA 18-0021

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 121

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JASON PAUL VEGAS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-16-586D
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Deborah S. Smith, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Lindsey R. Simon, Assistant
Attorney General, Helena, Montana

            Travis R. Ahner, Flathead County Attorney, John Donovan, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:  March 18, 2020

Decided:  May 12, 2020

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Jason Paul Vegas appeals from the November 9, 2017 Judgment and Sentence of the Eleventh Judicial District Court, Flathead County, following his conviction of Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102(1), MCA. We restate and address the following issue on appeal:

*Did the District Court err by denying Vegas's motion to suppress evidence obtained from a warrantless search?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In July 2016, agents of the Northwest Montana Drug Task Force began investigating a tip that Vegas was selling illegal drugs out of his hotel room at the La Quinta Inn in Kalispell, Montana. The tip came from a confidential informant who observed a text message on a friend's cell phone arranging for the purchase of "a couple ounces of heroin" from Vegas in Room 111.

¶3 The agents arrived at the La Quinta around midday and observed two individuals known to the agents to be a drug dealer and drug user leaving the hotel. After the individuals left, the agents entered the hotel and requested video surveillance from hotel management which showed the individuals going into Room 111 with a male matching the description of the heroin dealer in the tip. The agents also learned from hotel management that Room 109 and Room 111 had been rented under the name Barbara Satrom, whom the agents recognized as a local drug dealer. While the agents were reviewing the video surveillance, a housekeeper entered the room and identified Vegas as the occupant of both

2

Room 109 and Room 111, and informed the officers that Vegas had instructed her not to enter or clean either of the rooms during his occupancy.

¶4     The agents called a uniformed officer to assist them and proceeded to Vegas's hotel rooms to knock and announce their presence. Vegas answered the door of Room 109 by opening it slightly and keeping the chain in place. Upon seeing the uniformed officer, Vegas quickly shut and locked the door. The agents kicked down the door and entered Room 109. The agents also entered Room 111. After securing both rooms, the agents applied for and obtained a search warrant. Upon executing the warrant, the agents located approximately 54 grams of methamphetamine, a digital scale, and $3,437 in cash.

¶5     Vegas was charged with one count of Criminal Possession with Intent to Distribute, a felony, in violation of § 45-9-103(1), MCA. On June 23, 2017, Vegas filed a motion to suppress "all statements, observations, photographs, recordings, and physical evidence obtained" from Vegas's hotel rooms, arguing these items "must be suppressed as fruit of the poisonous tree as the probable cause for the search warrant was from an illegal warrantless search . . . ."

¶6     The District Court held a hearing on the motion to suppress on July 21, 2017. One of the agents testified that he and his colleagues believed they needed to quickly secure Vegas's hotel rooms prior to obtaining a search warrant because of the active drug dealing and the potential for those associating with Vegas recognizing the agents and alerting Vegas, who likely would respond by destroying the drug evidence before a search warrant could be obtained. The District Court denied Vegas's motion, finding probable cause and

exigent circumstances existed supporting the agents' warrantless entry into the hotel rooms.

¶7 On August 10, 2017, pursuant to a plea agreement, Vegas entered an *Alford* plea of guilty and was later sentenced to an amended charge of Criminal Possession of Dangerous Drugs. Vegas reserved his right to appeal the District Court's denial of his motion to suppress.

## STANDARDS OF REVIEW

¶8 We review a district court's denial of a motion to suppress evidence for whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Ruggirello*, 2008 MT 8, ¶ 15, 341 Mont. 88, 176 P.3d 252. "A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *Ruggirello*, ¶ 15 (quoting *State v. Vaughn*, 2007 MT 164, ¶ 15, 338 Mont. 97, 164 P.3d 873, *overruled in part on other grounds by Whitlow v. State*, 2008 MT 140, ¶ 13, 343 Mont. 90, 183 P.3d 861).

## DISCUSSION

¶9 *Did the District Court err by denying Vegas's motion to suppress evidence obtained from a warrantless search?*

¶10 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution both protect individuals against unreasonable governmental searches and seizures. *Ruggirello*, ¶ 17. Law enforcement's entry into a private home

4

without a warrant issued on probable cause constitutes a search for Fourth Amendment purposes, *see State v. Stone*, 2004 MT 151, ¶ 40, 321 Mont. 489, 92 P.3d 1178, and is considered per se unreasonable unless an exception applies. *State v. Wakeford*, 1998 MT 16, ¶ 21, 287 Mont. 220, 953 P.2d 1065. These constitutional protections also apply to occupants of motel rooms. *Wakeford*, ¶ 21.

¶11 One exception to the warrant requirement is the existence of exigent circumstances coupled with probable cause. *Ruggirello*, ¶ 17 (citing *Stone*, ¶ 18). Exigent circumstances exist when "the situation at hand would cause a reasonable person to believe that prompt action is necessary to prevent physical harm to an officer or other person, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating law enforcement efforts." *Ruggirello*, ¶ 17 (quoting *Stone*, ¶ 18). We look to the totality of the circumstances when evaluating whether exigent circumstances exist. *State v. Lanegan*, 2004 MT 134, ¶ 16, 321 Mont. 349, 91 P.3d 578 (citing *State v. McCarthy*, 258 Mont. 51, 57, 852 P.2d 111, 115 (1993)). Probable cause exists when "the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." *Ruggirello*, ¶ 17 (quoting *Stone*, ¶ 18).

¶12 "The State bears the heavy burden of showing the existence of exigent circumstances and can meet that burden only by demonstrating specific and articulable facts." *Ruggirello*, ¶ 18 (quoting *State v. Logan*, 2002 MT 206, ¶ 17, 311 Mont. 239, 53 P.3d 1285).

¶13 On appeal, Vegas concedes probable cause exists in this case, but he argues the agents' warrantless entry was not justified because no exigent circumstances existed. We disagree.

¶14 The District Court relied on several specific and articulable facts from the agents that prompt action was necessary to prevent the likely destruction of drug evidence. The agents knew that their presence was recognizable by other drug users and dealers in the community. After observing known drug users and dealers leaving Vegas's hotel rooms, the agents believed Vegas could easily be tipped off by someone who recognized the agents and likely would dispose of the drug evidence in the time it took for the agents to obtain a warrant. Additionally, Vegas slamming and locking the door in response to law enforcement's presence at his hotel room further created a situation requiring prompt action to prevent the destruction of relevant evidence. The agents did not need to be certain that the drug evidence was being destroyed in order for exigent circumstances to exist. *See Ruggirello*, ¶ 22. The District Court correctly determined exigent circumstances existed justifying the agents' warrantless entry into Vegas's hotel rooms.

## CONCLUSION

¶15 Based on the totality of the circumstances, the agents had a reasonable concern that the drugs that happened with Vegas, wouldn't stay with Vegas. Accordingly, the District Court did not err when it found that exigent circumstances justified the agents' warrantless entry into Vegas's hotel rooms. We affirm.

/S/ JAMES JEREMIAH SHEA

6

We Concur:

/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/ BETH BAKER