FILED

06/13/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0605

DA 22-0605

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 113N

SHANNON FALKENHAGEN,

      Petitioner and Appellant,

   v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV-22-068
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Nathan J. Hoines, Kelli A. Cummings, Hoines Law Office, P. C., Great
Falls, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, John C. Brothers, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  May 10, 2023

Decided:  June 13, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Shannon Falkenhagen appeals the Eighth Judicial District Court's denial of his petition to reinstate his driver's license, which was suspended when Falkenhagen refused to submit to a blood draw upon request of a law enforcement officer. Falkenhagen argued in his petition that Montana Highway Patrol Trooper Daniel Arnold did not have grounds to initiate the stop or to believe that he had been driving under the influence of alcohol. After a hearing at which Trooper Arnold was the only witness, the District Court held that there was particularized suspicion for both. Falkenhagen appeals the court's findings as to the traffic stop only. We affirm.

¶3 Trooper Arnold stopped Falkenhagen on February 4, 2022, for running a red light, a violation of § 61-8-207(3), MCA. Arnold testified that at approximately 11:00 p.m., he was stopped at a stoplight at the intersection of Sixth Street and Central Avenue West in Great Falls. Relevant to the issue on appeal, the transcript reflects the following questions by Falkenhagen's counsel and the trooper's answers:

> Q. And at that time, there was a couple of cars that tried to beat the red light; is that fair?
>
> A. That's fair.

Q. Okay. And my client was the second – the second vehicle?

A. The last one through the intersection, yes.

Q. There's two cars trying to beat through, essentially, the yellow light; is that correct?

A. That's fair.

The State asked no questions about the basis for Trooper Arnold's decision to initiate the stop. The trooper's remaining testimony was directed to the basis for his suspicion that Falkenhagen was driving under the influence of alcohol. Falkenhagen argued that the only evidence before the court was that Trooper Arnold pulled him over for entering the intersection in a yellow light, which is not illegal. The State countered, "The testimony was that he ran the red light on Central Avenue. That is a traffic violation, and that is grounds for the stop."

¶4 The District Court agreed with the State and denied Falkenhagen's petition. Relevant to the initial stop, the court explained from the bench:

> The officer's testimony was that the Defendant, [and] another vehicle in front of him, tried to beat the red light; didn't make it; and he stopped the Petitioner, who was the furthest one behind in that circumstance. Under the circumstances, based on the officer's testimony, the Court does find that there was probable cause to stop for a red light violation.

¶5 "We review a district court's ruling on a petition to reinstate a driver's license to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct." *Brown v. State*, 2009 MT 64, ¶ 8, 349 Mont. 408, 203 P.3d 842 (citation omitted). "A presumption of correctness attaches to the suspension

3

or revocation of a driver's license." *Muller v. State*, 2012 MT 66, ¶ 8, 364 Mont. 328, 274 P.3d 737 (citing *Widdicombe v. State*, 2004 MT 49, ¶ 7, 320 Mont. 133, 85 P.3d 1271). The petitioner bears the burden of proving that the suspension was improper. *Muller*, ¶ 8 (citation omitted).

¶6 By using public roadways, drivers in Montana impliedly consent to certain tests that determine the presence of alcohol or drugs in their blood. The law implies a driver's consent to: "(1) a pre-arrest preliminary alcohol screening test to estimate the person's alcohol concentration; and (2) a post-arrest blood or breath test to determine the presence of alcohol, drugs, or both." *Indreland v. Mont. DOJ, Motor Vehicle Div.*, 2019 MT 141, ¶ 8, 396 Mont. 163, 451 P.3d 51; *see* § 61-8-1016(1)(a), MCA.[1] A driver has the right to refuse these tests, effectively withdrawing the driver's implied consent. Section 61-8-1016(2)(c), MCA. A refusal, however, will cause the person's driver's license to be suspended. Section 61-8-1016(2)(c), MCA.

¶7 A person whose license is suspended for refusing to submit a breath or blood sample may petition for reinstatement of the license by timely filing in district court. Section 61-8-1017(1), MCA. When a person petitions for reinstatement, "[t]he issues in the hearing must be limited to determining whether a peace officer had a particularized

---

[1] *Indreland* was decided under § 61-8-403 (2019), and Falkenhagen brought his petition pursuant to the same. The relevant statutes were moved, however, effective January 1, 2022, to § 61-8-1016 and -1017, MCA. They remain substantively identical: "A person who operates or is in actual physical control of a vehicle or commercial motor vehicle upon the ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body." Section 61-8-1016(1)(a), MCA.

suspicion that the person was in violation of [the law prohibiting] driving under the influence . . . and whether the person refused to submit to the test." Section 61-8-1016(2)(d), MCA. Whether particularized suspicion existed "is a question of fact determined by examining the totality of the circumstances confronting the officer at the time." *Ditton v. DOJ Motor Vehicle Div.*, 2014 MT 54, ¶ 30, 374 Mont. 122, 319 P.3d 1268 (citations omitted). "Particularized suspicion is objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing." *State v. Wilson*, 2018 MT 268, ¶ 28, 393 Mont. 238, 430 P.3d 77.

¶8　　Most of the evidence at the hearing focused on indicators, or lack thereof, of Falkenhagen's intoxication. Falkenhagen does not contest the District Court's findings on this point. He instead argues clear error in the court's finding that he ran the red light, pointing out that Trooper Arnold never said that during his testimony. Falkenhagen is correct that Trooper Arnold did not testify the light was red when Falkenhagen entered the intersection. We conclude, however, that the District Court did not misapprehend the evidence. It is reasonable to infer from the questions asked and Arnold's responses that two vehicles "tried" to beat the light and that Falkenhagen—whose vehicle was the second one through—did not succeed. The State apparently made this inference when it did not ask Arnold to clarify that the light had turned red by the time Falkenhagen entered the intersection. Falkenhagen had the burden to overcome the presumption that his driver's license was correctly suspended by proving that the stop was not based on particularized

suspicion. *Muller*, ¶ 8. Falkenhagen's evidence that he was behind another vehicle that "tried to beat" the red light did not establish by a preponderance of the evidence that the light was yellow when Falkenhagen entered the intersection.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings of fact are not clearly erroneous. Falkenhagen did not meet his burden to overcome the presumption that the suspension of his driver's license was proper. We affirm the District Court's denial of the petition to reinstate his license.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

Justice Dirk Sandefur, dissenting.

¶10 I dissent. As recognized by the Majority, the only issue on appeal regarding the implied consent driver's license suspension and reinstatement hearing in this case under §§ 61-8-1016(2)(d) and -1017(4)(a), MCA (2021), is whether the investigating MHP Trooper at least had particularized suspicion upon which to reasonably believe, if not probable cause, that Falkenhagen entered the subject controlled intersection after the traffic light turned red in violation of § 61-8-207(3), MCA. *See also* § 61-8-201(1), MCA ("driver

6

of a vehicle shall obey the instructions of an official traffic control device").[1] In affirming the District Court finding of fact that the subject Trooper had such "probable cause," the Majority relies on the standard of review in civil driver's license reinstatement proceedings under §§ 61-8-1016(2)(d) and -1017(4)(a), MCA (2021), that the administrative license seizure and suspension on an implied consent refusal under § 61-8-1016(1), (2)(a), (e), and (4)(c)(i), MCA, is presumed correct, and thus the challenging driver has the burden of proving that it was unlawful. *See Hulse v. Mont. Dep't of Justice, Motor Vehicle Div.*, 1998 MT 108, ¶ 14, 289 Mont. 1, 961 P.2d 75 (construing now-repealed § 61-8-403, MCA). *Accord Kleinsasser v. State*, 2002 MT 36, ¶¶ 10-11, 308 Mont. 325, 42 P.3d 801 (citing *Hulse*).

¶11 Here, the Majority candidly recognizes that the only record evidence supporting the subject District Court finding of fact was the Trooper's unexplained and short-falling

---

[1] The 2021 Legislature repealed the former implied consent refusal driver's license suspension/reinstatement scheme previously codified in § 61-8-403, MCA (2019), and related sections, and then replaced it in pertinent part with the textually distinct §§ 61-8-1016(1), (2)(a)-(d), and -1017(4)(a), MCA (2021). Whether and to what extent, if any, the new statutory scheme is different in any pertinent manner or degree is not at issue here. Even though Montana's prior and current implied consent refusal driver's license seizure and suspension statutory schemes have always glossed over without reference the pertinent federal and state investigative search overlay, state and federal jurisprudence have long recognized that a predicate pre-arrest warrantless investigative traffic stop on particularized suspicion of criminal activity, which then leads to an implied consent DUI blood or breath test or development of particularized suspicion and/or probable cause of DUI, must be valid from the outset under a recognized exception to the warrant and probable cause requirements of the Fourth and Fourteenth Amendments to the United States Constitution and Article II, Section 11, of the Montana Constitution. *See, e.g.*, *Ditton v. Mont. Dep't of Justice, Motor Vehicle Div.*, 2014 MT 54, ¶ 30, 374 Mont. 122, 319 P.3d 1268; *Kleinsasser v. State*, 2002 MT 36, ¶¶ 11-12, 308 Mont. 325, 42 P.3d 801; *Bush v. Mont. Dep't of Justice, Motor Vehicle Div.*, 1998 MT 270, ¶¶ 10-11, 291 Mont. 359, 968 P.2d 716; *Hulse v. Mont. Dep't of Justice, Motor Vehicle Div.*, 1998 MT 108, ¶ 12, 289 Mont. 1, 961 P.2d 75.

testimony wherein he twice acknowledged as "fair" defense counsel's characterization that he saw Falkenhagen's vehicle "try[ing] to beat the red light," i.e., "trying to beat through . . . the yellow light." He did not testify, however, as to whether he in fact saw Falkenhagen's vehicle enter the controlled intersection on a red light. While the *Terry* investigative stop exception to the Fourth Amendment warrant and probable cause requirements allows for a reasonable, but ultimately erroneous, particularized suspicion of the subject criminal activity, the Trooper's at-best ambiguous acknowledgment that he saw Falkenhagen's vehicle "try[ing] to beat the red light" was insufficient to support a reasonable District Court inference that the Trooper in fact saw the subject vehicle enter, or appear to enter, the intersection under a red light rather than a yellow. Recognizing this evidentiary defect, the Majority points out that the State later argued that the "testimony was that [Falkenhagen] ran the red light," "[t]hat is a traffic violation, and that is grounds for the stop."

¶12 However, as a matter of law, the State's after-the-fact re-characterization of the actual evidence could provide no additional evidentiary support for a broader evidentiary inference by the District Court beyond the Trooper's limited testimony. A permissible factual "inference" is a logical deduction "which the trier of fact may make" from a fact in evidence "legally proved." Sections 26-1-501 and -502, MCA; *State v. Barick*, 143 Mont. 273, 287, 389 P.2d 170, 177 (1964). While the challenging party has the burden of overcoming the presumption of correctness of an implied consent refusal driver's license suspension at hearing, our standard of review of a pertinent district court finding of fact on

8

the resulting hearing record is whether it was clearly erroneous, and whether the court correctly applied the applicable law to those facts. *Ditton v. Mont. Dep't of Justice, Motor Vehicle Div.*, 2014 MT 54, ¶ 14, 374 Mont. 122, 319 P.3d 1268; *Bush v. Mont. Dep't of Justice, Motor Vehicle Div.*, 1998 MT 270, ¶ 7, 291 Mont. 359, 968 P.2d 716; *Kleinsasser*, ¶ 9. Here, the pertinent District Court finding of fact as to whether the Trooper actually saw or perceived Falkenhagen's vehicle enter the subject intersection under a red light was thus clearly erroneous if either not supported by substantial record evidence or, upon our independent review of the record, we are firmly convinced that the court misapprehended the effect of the evidence or was otherwise mistaken. *Bush*, ¶ 7. Whether on the ground that it was not supported by substantial record evidence, or that the court misapprehended the effect of the limited and at-best ambiguous hearing evidence, I would hold that the essence of the District Court's dispositive finding of fact—that Falkenhagen's vehicle entered the subject intersection under a red light—was clearly erroneous.

/S/ DIRK M. SANDEFUR